+SHAW, TRUSTEE, ETC., v. FIFTH WARD BUILDING ASSN. ET AL.

**1. GENERAL COSTS OF ASSIGNMENT ARE PAYABLE FROM PERSONAL ESTATE.**

In settling the rights of the parties, and making distribution of the proceeds of sales of mortgaged property under an assignment, no part thereof should be applied to the payment of the general costs of the assignment. These were payable from the personal estate in the hands of the assignee, while the costs of the proceeding for the sale of such real estate were payable from the proceeds of such sales.

**2. ASSIGNMENT NOT ENTITLED TO POUNDAGE ON PURCHASES OF LIENHOLDERS.**

The assignee was not entitled to any poundage or commission on that part of the purchase-money for the tracts sold to lienholders, which was not actually "collected and accounted for by him," but which, under the order of the court, was retained by them respectively, and applied in part payment of their respective claims. And the assignee having presented no claim for extraordinary services rendered, or for expenses incurred as to these tracts of real estate, or either of them, other than for the fees of his counsel in the conduct of the proceedings for the sale thereof, no allowance in this case should have been made therefor.

**3. WHERE SALE OF REAL ESTATE IS NECESSARY AND BENEFITS LIENHOLDER, ATTORNEY FEES ARE ALLOWABLE.**

But it appearing that the proceeding was commenced by the assignee in good faith, and that it was apparently necessary to the proper discharge of his duty, and that the same in some degree operated to the benefit of lienholders, who otherwise would have been compelled to file several petitions for the foreclosure of their mortgages, resulting in greater costs, which would have to be paid from the proceeds of such sales, in such case, under the provisions of sec. 6357, Rev. Stat., such assignee may be allowed for the fees of his counsel such sum as under all the circumstances of the case may seem to the court just and reasonable.

---

+ This decision was cited by the Supreme Court, as to assignee's compensation, in Andrews v. Johns, 59 O. S., 65, 74 ; and is followed by the same circuit court in Harrison v. Chatfield, 5 Circ. Dec., 553.

Error to the Court of Common Pleas of. Clermont county.

SMITH, J.

The facts of this case as agreed upon and found by the court of common pleas, are substantially these:

Cary Hartman and others, partners in business, on October.14, 1890, made an assignment of all their partnership property, personal and real, to J. R. Shaw, under the assignment laws of Ohio, and afterwards Shaw was duly chosen by the creditors as trustee, and qualified as such. The personal property received by the trustee, was by him sold, and realized the sum of $2,035.00. The whole of such personal property had, before the assignment, been covered by chattel mortgages, on which there was due an amount largely exceeding the sum realized from the sale of such property. There were two tracts of land assigned. The first was covered by a mortgage to The Fifth Ward Building Association, and on the other was a mortgage to the Compromise Building Association. The papers show, and it is conceded to be true, that the appraisement made of each of these two tracts by the appraisers appointed by the court, before the filing of the petition for the sale of these parcels, showed a valuation of each which, if realized at the sale, would have much more than paid the several mortgages thereon, and the costs, and would have left a balance for the general creditors.

Thereupon, the trustee commenced a proceeding in the probate court of this county, under the provisions of sec. 6351, Rev. Stat., for the sale of such real estate, making the assignors and their respective wives, and said building associations, parties defendant, and alleging that said corporations severally claimed liens thereon. Answers were filed by such associations, setting up their respective claims, which were found by the court to be good and valid liens thereon. In such proceeding, the trustee sold to The Fifth Ward Building Association, at public sale, the land on which it held the mortgage, at two-thirds of its appraised value, and the amount bid, therefore, was not sufficient to pay the mortgage claim the purchaser held thereon, in full. The other tract was also sold by the trustee to the Compromise Building Association at two-thirds of the appraisement, and the amount bid was not sufficient to pay the mortgage claim of the association thereon. Both sales were confirmed by the court.

The probate court then proceeded to order the distribution of the proceeds of the two sales. It directed that each of these two funds should, with the fund arising from the personal estate, pay the general costs of the assignment in proportion to the amount of each fund, and that in addition to this, that so far as the proceeds of the sale of the two tracts of land was concerned, each should pay its proportional share, first, of the court costs proper, that is, the probate judge's fees in the case, and those of the sheriff and printer in said case; and second, the percentage of the trustee on the whole amounts bid for the property, at the rate fixed by the statute, as if the land had been sold to a stranger, and the purchase money actually paid to the trustee; and third, of the fee of the attorney of the trustee, who had filed the petition for the sale of the land, and had attended to the case in that court, which fee was fixed by the court at the sum of $172.75. And that the residue in each case be paid to the association which had the lien thereon.

On appeal from this order, on the facts thus found, the court of common pleas adjudged, that the trustee was not entitled to receive anything from the proceeds of the sale of the land, as commissions or poundage, or for any services rendered by him in relation thereto, or for the services of his counsel in such suit, and that the said respective associations were entitled to retain the whole amounts bid by them respectively, in part payment of their several claims, except that each of them should pay its proportion of the court costs proper in such case. It was, however, found by the court, that if the trustee was, under the law, entitled to receive anything from the funds for counsel fees, the amount allowed therefor in the probate court was just and reasonable. Was the judgment of the court of common pleas right?

*First*—The first question for consideration is, should the funds arising from the sale of the real estate, be charged with any part of the general costs of the assignment, not made in this particular case? Whatever might be the rule, if the personal property assigned was not subject to any specific lien to an amount greater than its value, while the real estate was, in a case like this, where both the personal and real estate was so incumbered by liens to different persons, we are of the opinion that it is the law, that each of those separate funds should pay its own cost of converting it into money, and administering it, and that it would not be fair or just to require either to contribute to the payment of expenses incurred about the other, and particularly in view of the general principle that the personal estate is primarily liable for the costs of administration, no part of the cost and expense of administering the personal estate in this case

should be paid from the proceeds of the sale of the real estate. This we think is warranted by the statute, and by the decisions of the supreme court. See Ingham v. Lindeman, 37 O. S. 218, and Simongton v. McLain, 37 O. S. 660, and the action of the court of common pleas, as to this, was right.

*Second*—We are further of the opinion that the court of common pleas did not err in refusing to allow to the trustee, poundage or commissions on the purchase money of the land so sold to the associations which was not actually received by him. It was not "collected and accounted for" by him, and it is only when this is done that sec. 6357 entitles him to such poundage or commissions.

It has always been the policy of our law, as settled by many decisions, to allow to a sheriff or other like officer, poundage only on money collected and handled by him, and in the case of Stone v. Strong, 42 O. S. 53, the supreme court applied the same rule to an administrator in a case where he had sold at judicial sale, the land of his intestate, to a person who had a valid lien thereon, and to whom the proceeds of the sale were to go, to be applied to the payment of such lien. The language of the statute fixing the compensation of an administrator on the sale by him of the real estate (sec. 6188) is almost identical with that fixing the compensation of assignees (sec. 6357), and the same rule must apply to both. But if such purchaser, under the order of the court, has to pay to the assignee the amount of the proper costs of the court, or counsel fees, or other legal expenses chargeable to the fund, on this sum the trustee would be entitled to his legal compensation, for then it would have been collected, and would have to be accounted for by him.

*Third*—The court of common pleas refused to make any allowance to this trustee for any services in regard to these two tracts of land, or for his counsel fees incurred in bringing the land to sale, on the ground that no such allowance was warranted by the statute, though the court did find that the allowance made by the probate judge for attorneys' fees was a reasonable and proper one, if the law authorized the payment of anything therefor. We think this refusal of the court, so far as counsel fees are concerned, was erroneous. It does not appear that the trustee rendered any special service in regard to the land, for which he was entitled to be paid. If he had, the court might well allow what was right therefor. He certainly was not entitled to poundage on money not received. But it clearly appears that the employment of counsel by this trustee to bring these lands to sale, was proper and necessary. The appraisement showed that they were worth considerably more than the amount of the mortgages upon them, and that something would probably be realized from the sale for other creditors, after paying the mortgage claims thereon, and the costs and expenses, and it would seem, therefore, that the trustee was justified in filing this petition. And if this be so, it would also seem, that under the terms of the statute, the court having the right to order the distribution of the fund, can properly not only decree the payment therefrom of the usual and ordinary court costs in the case, but in addition such just, reasonable, and actual and necessary expenses of the assignee, and reasonable and necessary counsel fees incurred with reference to such fund, and the proceeds of the real estate so sold, thus brought before the court for distribution. If, however, the services of such assignee, or of his counsel, are not in any sense for the benefit of the fund thus realized, or of those having liens upon it, it is the law as we understand, (and it is a reasonable doctrine), that such services should not be paid for from the fund in a case like this, for then it would be compelling the lienholder to pay from his own pocket, for that which could not benefit him.

Such, we think, is the law as practically settled by the supreme court in the cases before referred to, Ingham v. Lindeman, 37 O. S. 218, and McLain v. Simongton, 37 O. S. 660. In the first of these cases it was held that in an action brought by a mortgagee against an assignee for taking and administering chattel property so mortgaged, (which the court held he had a right to do), the assignee

should be allowed his reasonable attorney fees for defending such action. And in the other case, where a creditor was legally in possession of property by proceedings in attachment, and the property was afterwards assigned by the owner to an assignee for the benefit of creditors, and the assignee attempted in the attachment case, to defeat the claim of the attaching creditor to such property, but was unsuccessful in this, it was held, that as against such creditor the assignee was not entitled to his attorney's fees in such action, from the fund produced by a sale of such property, when made by the assignee by the consent of all parties. That is, that the attaching creditor should not in effect be required to pay the fees of his adversary's lawyer, employed to defeat his just claim to the property. If, however, the assignee had succeeded in the litigation, and recovered the property for the benefit of other creditors, we think on principles of law and justice, as against those who thus became entitled to the fund, an allowance for such attorney's fees should be made therefrom.

But the case before this court was not such an adversary proceeding against those holding mortgages on the land. That is, the assignee did not contest their rights as mortgagees. He alleged in his petition that they severally claimed to hold liens on these different tracts of land, and called upon them to set up their claims in the proceeding. Substantially the action was one in the interest of the lien-holders—seeking to have the land sold and the proceeds applied to the payment of the mortgages, and if they had seen proper to do so, the mortgagees might have relied upon the attorney employed by the assignee, to see that the proceeds of the sale were distributed as the statute provides, and to the payment of liens thereon in the order of their priority. In such case, as in proceedings in partition, where counsel fees of the petitioners are paid from the fund, it would seem to be the duty of the assignee and of his attorney, to see that the proceeds of the sale are properly distributed. And, if controversy arises between the parties as to their rights, it would not be proper for the attorney in theory representing all of the parties, to charge the fund for services rendered to one of such adversary parties, but only for general services rendered for the benefit of the property or of the fund. But if the lien-holder made a defendant, sees proper to do so, he may employ his own counsel to represent him, and if he does so, and thus relieves the attorney of the assignee from labor and responsibility in the case, this should be taken into account by the court called upon to fix the reasonable value of the services of such attorney.

Now, if this action had not been brought by the assignee, it is manifest that to enable the mortgagees to realize their claims from the lands, two separate actions of foreclosure would have had to be brought, (if they were entitled to bring them, which is a mooted question), and to do this attorney fees would have been incurred by them, and much larger cost bills, which would have to come out of the proceeds of the sale when made. It would appear, then, that the services of the attorney of the assignee were of benefit to these lienholders (even if they employed counsel in this case to represent them), and saved them from costs and expenses, which otherwise would have fallen upon them, and therefore some allowance should be made therefor, from the fund so produced. If this were not the law, how could it be expected that assignees or trustees could or would properly execute their trust. In many cases such proceeding must be commenced by them, or they would fail to discharge the duty incumbent upon them, and it would be unjust and contrary to settled principles of law, to require them to conduct such proceedings at their own expense or risk. We think the test as to whether such fees should be allowed from the fund is this: was the action of the assignee in prosecuting the proceeding in good faith and on reasonable grounds, and were the services of value to those to whom the fund produced is to go? If so, allowance should be made therefor.

It appearing to us that the services of the attorney of the trustee in this case were of value to the fund, and that the proceeding was in good faith, and warranted by law, and the court of common pleas having refused to allow anything

therefor, on the sole ground that the law did not warrant the payment, the judg-
ment of the court for this reason is reversed, and the cause remanded for a new
trial.

    George W. Hulick, for plaintiff in error.
    Granger & Hunt and S. B. Deal, for defendants in error.